UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                     Plaintiff,<br><br>         vs.<br><br>BETHLEHEM SHAH,<br><br>                     Defendant. | CR. 18-50089-02-JLV<br><br><br>ORDER |

Defendant Bethlehem Shah filed a motion *in limine* seeking to exclude evidence of the defendant's "prior travel to and from the United States and Canada."  (Docket 138 ¶ two at p. 2).   Defendant asserts "[t]here is no evidence that [her] prior border crossings are related to drug trafficking or any other illicit purpose[.]"  Id.   For this reason, defendant argues her "prior travel is irrelevant and inadmissible pursuant to Federal Rules of Evidence 401 and 403."  Id.   Admitting this information "would invite the jury to speculate and convict on speculation."  Id.

The government resists defendant's motion.   (Docket 159 at pp. 4-6). First, the government argues the indictment states "the conspiracy began 'on a date unknown but *no later than* on or about July 2018 and continuing through the date of the Indictment.[' "]  Id. at p. 4 (emphasis in government's brief; referencing Docket 26).   Because of the language of the indictment, the government submits "evidence up to and including July and August 2018 showing that [defendant] crossed the border on numerous occasions, is

relevant and direct evidence of the conspiracy." Id.   These border crossings in the government's view "support[] the allegation in the Indictment that the conspiracy occurred 'in the District of South Dakota *and elsewhere*.' " Id. at p. 5 (emphasis in government's brief; referencing Docket 26).

The government represents that co-conspirator Brittany Babiuk "will testify [at trial] about her involvement over time and the workings of the drug trafficking organization, to include border crossings that facilitated the transportation of illegal drugs." Id.   In addition to Ms. Babiuk's testimony, the government intends to call Homeland Security Special Agent ("SA") Nick Saroff.  Id.   According to the government, his testimony will provide "the dates and number of times both Babiuk and Defendant crossed the border in the past couple of years." Id.   The government's response attached records from Homeland Security detailing their border crossings.  Id. (referencing Dockets 159-1 & 159-2).

The government argues defendant's border crossings from Canada into the United States and back are relevant and admissible evidence under Fed. R. Evid. 401.  Id. at pp. 5-6 (citing United State v. Gardner, 447 F.3d 558 (8th Cir. 2006)).   In the government's view, Ms. Shah's "consistent travel back and forth into the United States is direct evidence of the Defendant's involvement in this conspiracy.   The weight given to the evidence is up to the jury to decide." Id. at p. 6.

"TECS [Treasury Enforcement Communications System] . . . is the main database used by U.S. Customs and Border Protection to determine the

admissibility of individuals arriving at the border." Amiri v. Secretary, Department of Homeland Security, No. 18-1819, 2020 WL 3618888, at *1 n.1 (6th Cir. July 2, 2020). "The information contained in a TECS record may include a person's name, date of birth, potentially what document they used, potentially which method they used to enter into the United States, and potentially which method they used to exit the United States." United States v. Cabrera-Beltran, 660 F.3d 742, 750-51 (4th Cir. 2011) (conspiracy to import cocaine and heroin; internal quotation marks omitted). "For vehicular border crossings, TECS maintains a record of the vehicles used and their license plates. For air travel across the border, TECS records may also include information on the departing and receiving airports." Id. at 751. "[A]ir carriers report itinerary information of certain passengers to Customs and Border Protection (CBP), which then maintains that information in the TECS system." Rodriguez-Quiroz v. Lynch, 835 F.3d 809, 819 (8th Cir. 2016).

Examining the Homeland Security records, it appears Ms. Shah made a number of border crossings by airline beginning in March 2018 through the land crossing on August 1, 2018, the day before her arrest in South Dakota. See Docket 159-1. On March 12, 2018, she entered the United States on an airline flight originating in Calgary, inbound to Los Angeles but the record does not disclose any outbound leg returning to Canada. Id. On July 3, 2018, Ms. Shah was a passenger on a flight originating in Winnipeg and arriving in Minneapolis but the record shows no outbound flight. Id. Ms.

Shah traveled on a July 18, 2018, flight originating in Calgary, inbound to Houston but no outbound record appears.[1]   Id.

The record shows that at other times Ms. Shah crossed into the United States with an airline ticket from Winnipeg destined for Denver or Minneapolis but her outbound crossings originated in Las Vegas, Los Angeles or Houston.[2] The records associated with these trips occurred between April 7-18, 2018; May 3-10, 2018; and June 18-29, 2018.   Id.

Ms. Shah crossed into the United States on August 1, 2018, at Pembina, North Dakota, with what appears to be a United States passport with an identification number of "******0391 (US)."[3]   Id.   During previous border crossings into the United States, Ms. Shah apparently used a Canadian passport with the following identification number: "GL***222(CA)."[4]   Id.

In another conspiracy to distribute controlled substances case, the court examined the government's trial evidence "showing that numerous flight

---

[1]An individual traveling into the United States for tourism or legal business purposes would under ordinary circumstances have an outbound record at the Canadian border, whether by air or land.

[2]It is not known whether Ms. Shah had connecting flights to these other cities in the United States or whether her airline tickets were only for Winnipeg to Denver or Minneapolis.

[3]The United States passport numbering system consists of 6-9 numbers. See https://www.e-verify.gov/about-e-verify/e-verify-data/e-verify-enhancements/june-2011 (last visited July 27, 2020).

[4]The Canadian passport numbering system consists of eight characters beginning with two letters and ending with six numbers.   See https://www.cic.gc.ca/english/helpcentre/answer.asp?qnum=1446&top=14#passport (last visited July 27, 2020).

reservations were made in [a co-conspirator] Rasasy's name in the year [of the conspiracy indictment], including flights originating or ending in California and Little Rock[, AR]."   Gardner, 447 F.3d at 561.   The court found the evidence relevant under Rule 401 and held:

> The numerous airline reservations in Rasasy's name were some support for his testimony that he was serving as a drug courier by air that year.   The uncertainties noted by Gardner—which defense counsel effectively established on cross-examination—went to the weight of the evidence, not its admissibility. . . . The district court did not abuse its discretion by admitting this relevant evidence.

Id. (referencing Contemporary Mission, Inc., v. Famous Music Corp., 557 F.2d 918, 927 (2d Cir. 1977)).   See also United States v. Haynes, 729 F.3d 178, 184 (2d Cir. 2013) (In an importation of methamphetamine case, "[a] law enforcement agent . . . testified that the defendant had a history of border crossings into the United States and provided details about the circumstances of those prior crossings.") (reversed on other grounds).

The first question must be whether this border crossing information is extrinsic to the present conspiracy indictment or part of the *res gestae* of the conspiracy charge.   "When evidence is admitted under res gestae, Rule 404(b) is not implicated."   United States v. Riebold, 135 F.3d 1226, 1229 (8th Cir. 1998) (referencing United States v. LeCompte, 108 F.3d 948, 952 (8th Cir. 1997)).   Prior conduct constitutes *res gestae* evidence when it is used "to explain both the genesis and the execution of" a drug conspiracy.   United States v. Roberts, 253 F.3d 1131, 1134 (8th Cir. 2001).

Ms. Shah's prior travel activities "arguably play[] an integral role in the instant offense, and the district court [does] not abuse its discretion in admitting the challenged testimony as res gestae, non-Rule 404(b) evidence." Id. at 1135 (referencing Moore v. United States, 178 F.3d 994, 1000 (8th Cir. 1999) (("Evidence that 'tends logically to prove any element of the crime charged . . . is admissible as an integral part of the immediate context of the crime' and is not governed by [Rule] 404(b).") (internal citation omitted). "[T]his evidence was probative because it helped to explain the circumstances of the [current conspiracy] and the nature of [Ms. Babiuk's] and [Ms. Shah's] relationship vis-a-vis the crime."  Id. at 1135.   " '[B]ad acts that form the factual setting of the crime in issue' or that 'form an integral part of the crime charged' do not come within [Rule 404(b)'s] ambit at all."   United States v. Wilson, 177 F.3d 712, 714 (8th Cir. 1999) (citing United States v. Heidebur, 122 F.3d 577, 579 (8th Cir. 1997) (quoting United States v. Williams, 95 F.3d 723, 731 (8th Cir. 1996)).

The court finds Ms. Shah's border crossings and trips to distance cities in the United States are part of the *res gestae* of the case.   Roberts, 253 F.3d at 1134.

If not *res gestae* to the present conspiracy charge, evidence of other crimes, wrongs, or acts is inadmissible to show that the defendant acted in conformity with her bad character.   Fed. R. Evid. 404(b).   Such evidence may be admissible, however, "for other purpose[s], such as proof[ ] [of] motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake

or lack of accident." Id.   "Rule 404(b) is a rule of inclusion; we will reverse a district court's admission of prior conduct evidence only when the evidence had no bearing on the issues in a case and was used solely to establish a defendant's propensity to commit a crime." United States v. James, 564 F.3d 960, 963 (8th Cir. 2009).

Ms. Babiuk's testimony that she and Ms. Shah frequently traveled into the United States to acquire quantities of controlled substances, while not admissible to show Ms. Shah's bad character, is admissible to show Ms. Shah's opportunity, plan and knowledge of the international movement of controlled substances.   Fed. R. Evid. 401 and 404(b).   While the court's "discretion would be abused if evidence of prior crimes or misconduct were permitted for the purpose of showing either the criminal character of a defendant or [her] propensity to commit crime, if the incident is closely related in time and nature to the crime charged, it is admissible for the purpose of showing intent or knowledge." United States v. Fonseca, 490 F.2d 464, 469 (5th Cir. 1974).   If after hearing the evidence during trial the court concludes this information is not *res gestae* but rather admissible under Rule 404(b), the court will give a proper limiting instruction.

Finally, Ms. Babiuk's testimony may well be corroborated by the border crossing records.   United States v. Chavez-Ibarra, 494 Fed. Appx. 416, 422 (5th Cir. 2012).   That question is for the jury to resolve but at this juncture the court finds the border crossing exhibits and testimony of SA Saroff are relevant and admissible for that purpose as well.   Gardner, 447 F.3d at 561.

7

The court will limit the government's presentation of this evidence to Ms. Shah's border crossings beginning on March 12, 2018, through the date of her arrest, August 2, 2018, and limit SA Saroff's testimony accordingly.   This period encompasses the border crossings of Ms. Babiuk which appear to alternate with Ms. Shah's border crossings.   <u>Compare</u> Dockets 159-1 & 159-2.   This will minimize the risk of undue prejudice which might be caused by looking further back in time into Ms. Shah's travel records when Ms. Babiuk was apparently involved.   Fed. R. Evid. 403.

Good cause appearing, it is

ORDERED that defendant's motion *in limine* (Docket 138 ¶ two) is granted in part and denied in part consistent with this order.

IT IS FURTHER ORDERED that the court will limit the government's testimony regarding Ms. Shah's border crossings to the period beginning on March 12, 2018, through the date of her arrest, August 2, 2018, and limit SA Saroff's testimony to the same time frame.

Dated August 3, 2020.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE